**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| JOHN K. HAWTHORNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:08CV202 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, John K. Hawthorne, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 21) and motion to remand (docket no. 22) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 24) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI in July 2005, claiming disability due to Crohn's disease, diabetes, heart problems, high cholesterol, back pain, acid reflux, feet and ankle swelling, and arthritis. (R. at 80.) Initially, Plaintiff alleged that the disability's onset date was May 1, 2005. (R. at 81.) The date was amended, however, to June 1, 2005 to correspond with the date the Disability Determination Services ("DDS") ascertained that Plaintiff's earnings fell below the level of substantial gainful activity. (R. at 20.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 38-48.) Plaintiff requested a hearing and on September 5, 2006, accompanied by counsel, he testified before an ALJ. (R. at 49, 484-519.) On December 20, 2006, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act because based on his age, education, work experience, and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 29-30.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 8-16.) Plaintiff sought review in this Court, and at the Commissioner's request, the case was remanded so that the Appeals Council could consider additional evidence. (R. at 525-27.) Finding that the additional

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the DDS, a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

evidence did not provide a basis to change the ALJ's decision, the Appeals Council again denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 521-24.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are

conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

burden in the final step with the testimony of a VE.  When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

### IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability.  (R. at 22.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of Crohn's disease and diabetes with neuropathy, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 22-26.)  The ALJ next determined that Plaintiff had the RFC to perform light work that involves only occasional pushing, pulling, and stooping.  (R. at 26-29.)  Additionally, the ALJ found that the Plaintiff should avoid all other postural activities, such as climbing, balancing, kneeling, crouching, crawling, and frequent manipulative activities, such as reaching, handling, feeling, and fingering, and that he should avoid concentrated exposure to workplace hazards, asthma irritants, extreme temperatures, humidity, and vibration.  (R. at 26-29.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a truck driver, forklift driver, or cook/caterer/delivery person because of

the levels of exertion required in each position. (R. at 29.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 20-30.) Specifically, the ALJ found that Plaintiff could work as a mail clerk, security guard, and production inspector or grader. (R. at 30.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 30-31.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physicians; (2) the ALJ erred by posing a hypothetical to the VE that did not include all of Plaintiff's limitations; and (3) the Appeals Council erred by disregarding the additional evidence presented on remand. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 26-30.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 13-27.)

**1.     Plaintiff contends that the ALJ improperly discounted the opinions of Plaintiff's treating physicians.**

Plaintiff contends that the ALJ improperly discounted the opinions of three of Plaintiff's treating physicians, namely, Plaintiff's primary care physician (Dr. Michie), Plaintiff's gastroenterologist (Dr. Allen), and Plaintiff's podiatrist (Dr. Reese). (Pl.'s Mem. 26-28.) During the sequential analysis, when the ALJ determines whether the claimant has a medically-

determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. Michie completed a Work Related Limitations form for Plaintiff, indicating that Plaintiff was not capable of performing his past work as a truck driver and could not perform any other type of work activity. (R. at 260-64.) Dr. Reese also filled out a Work Related Limitations Form for Plaintiff, and she opined that, given Plaintiff's unmedicated neuropathy, Plaintiff could

perform sedentary or less than sedentary work. (R. at 420-24.) Additionally, Dr. Allen provided an opinion, using an untitled functional capacity form to explain that in an eight hour period, Plaintiff could sit for a total of six hours, stand and walk for only five minutes, was incapable of lifting anything, and would need up to ten unscheduled restroom breaks, sometimes lasting ten to thirty minutes each. (R. at 301-02.) He also stated that Plaintiff could work when his Crohn's disease was in remission, but that it had not been in remission "for months." (R. at 301, 303.)

The ALJ considered each of the physician's opinions and treatment notes. (R. at 22-26.) The ALJ did not reject the treating physicians' opinions entirely; rather, he incorporated into his decision some of the postural, environmental, and manipulative limitations they recommended. (R. at 27.) However, he otherwise accorded the opinions of Drs. Michie and Reese lesser weight to the extent that their opinions were not consistent with the preponderance of the objective medical evidence in the record and because their opinions were unsupported by their generally unremarkable treatment notes. (R. at 23, 25.) The ALJ accorded Dr. Allen's opinion diminished weight because his treatment notes, although fairly thorough, did not support his opinion that Plaintiff's Crohn's flair-ups occurred with the frequency that would render Plaintiff unable to function as alleged by Dr. Allen in the untitled form. (R. at 24.) Additionally, the ALJ noted that the opinions of Drs. Allen and Reese were rendered in November 2005 when the Plaintiff was having a Crohn's flare up, which later resolved; that Dr. Reese based her opinion primarily on the Plaintiff's diabetic neuropathy, despite the fact that Plaintiff had declined a referral to a neurologist; and that Plaintiff had passed his physical examinations, performed by Dr. Michie, for his commercial driver's license on March 19, 2004 and March 8, 2008. (R. at 23, 27.)

Upon review of the record, the Court concludes that the ALJ properly evaluated the opinions of Drs. Michie, Reese, and Allen, and assigned them an appropriate respective weight.

As noted by the ALJ in his decision, the opinions of Drs. Michie and Reese were inconsistent with the treatment notes of Dr. Allen, the opinion and treatment notes of Dr. Powers, who treated Plaintiff's diabetes, as well as with the DDS assessments. (R. at 265-99, 304-10, 312-15, 331-32, 347-418.) Additionally, Dr. Allen's opinion was unsupported by his own treatment notes. During the time that Plaintiff treated with Dr. Allen, Plaintiff experienced one Crohn's flare up in August of 2002. (R. at 288.) Dr. Allen noted that this was Plaintiff's first flare up in twenty years. (R. at 288.) Plaintiff did not see Dr. Allen for a flare up again until July of 2004 when Plaintiff took himself off of his prescription for Flagyl, and Dr. Allen's notes reflect that Plaintiff "began to feel a little better" when he restarted taking Flagyl. (R. at 279-80.) Plaintiff suffered additional flare ups in December of 2004 and September of 2005. (R. at 269-274.)

Dr. Powers's notes reflect that in June of 2005, she felt that Plaintiff could work despite his diabetes. (R. at 351.) In October of 2005, Dr. Powers noted that Plaintiff's "glucoses seemed to be doing fairly well." (R. at 349.) Additionally, Plaintiff's medical records were evaluated by two DDS physicians, who concluded that Plaintiff was capable of performing light work, and specifically, that Plaintiff can lift and carry twenty pounds on an occasional basis and ten pounds on a frequent basis, had no limitations in his ability to stand, walk, or sit for prolonged periods, and had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 304-10.) Because the ALJ found that the opinions of Drs. Michie, Reese, and Allen were inconsistent with the preponderance of medical evidence in the record and were unsupported by their own treatment notes, the doctors' opinions were not entitled to controlling weight, and the ALJ properly assigned them lesser weight.

**2.	Plaintiff contends that the ALJ erred by posing a hypothetical to the VE that did not include all of Plaintiff's limitations.**

Plaintiff argues that the ALJ improperly failed to consider all of Plaintiff's limitations in the hypothetical questions presented to the VE in step five of the sequential evaluation and in his determination of Plaintiff's RFC. (Pl.'s Mem. at 27-28.) More precisely, Plaintiff argues that the hypothetical proposed by the ALJ did not include the following limitations, which were suggested by Plaintiff's treating physicians: that Plaintiff would need to utilize the restroom at unpredicted times during an eight hour day and would need to spend a significant amount of time in the restroom; that Plaintiff would miss numerous days of work because of his impairments; and that Plaintiff would need to elevate his legs because of his neuropathy. (Id.) Plaintiff asserts that the ALJ improperly failed to include those impairments in the hypothetical posed to the ALJ, and, therefore, the ALJ's determination that Plaintiff could perform light work was improper. (Id.)

At the fourth step of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of his/her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The analysis requires that the ALJ evaluate all of the factors that contribute to the claimant's RFC, as well as the "physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). In making the determination, the ALJ is permitted to utilize vocational experts, vocational specialists or other resources to determine whether a claimant can perform his/her past relevant work. 20 C.F.R § 404.1560(b)(2). When utilizing a VE in this capacity, the VE "may offer expert opinion in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the

claimant's previous work." Id.

Plaintiff asserts that the hypothetical posed to the VE at his hearing failed to incorporate the limitations recommended by Dr. Allen that Plaintiff would need to utilize the restroom at unpredicted times during an eight hour day, would need to spend a significant amount of time in the restroom, and would miss numerous days of work because of his impairments; and the limitation recommended by Drs. Michie and Reese that Plaintiff would need to elevate his legs because of his neuropathy. (Pl.'s Mem. at 27-28.) Specifically, Plaintiff argues that had the ALJ asked the VE to consider these additional limitations, the VE would have opined that he could not perform light or sedentary work and was thus entitled to disability benefits. (Id.) Plaintiff contends that his RFC, and consequentially, the hypothetical, should have included such limitations. Therefore, the issue is whether the RFC was properly determined.

The ALJ conducted the proper RFC calculation, examining the Plaintiff's subjective complaints and the relevant portions of the record, as discussed above. The ALJ performed the proper Craig analysis, as required when calculating a plaintiff's RFC. Under Craig, the ALJ, in evaluating a claimant's subjective symptoms, must follow a two-step analysis. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a

12

claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

The ALJ properly determined that Plaintiff's Crohn's disease and diabetes with neuropathy could reasonably be expected to produce the symptoms alleged by Plaintiff, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (R. at 29.) In support of the latter conclusion, the ALJ explained that, although Plaintiff claimed that his Crohn's disease had been out of control since 1999, the record showed that Plaintiff continued to work until June of 2005. (R. at 29.) Additionally, the ALJ noted that the record indicated that the Plaintiff had misrepresented to his employer something that Dr. Powers said about his ability to work various shifts, and that Dr. Powers had threatened to dismiss Plaintiff from her practice if he ever misrepresented her statements to his employer again. (R. at 29). Finally, the ALJ found that Plaintiff's testimony exaggerated his weight loss between January 2005 and the date of the hearing. (R. at 29).

Additionally, the record indicates that the hypothetical questions the ALJ posed to the VE were supported by the evidence in the record. The ALJ asked the VE a lengthy hypothetical which addressed Plaintiff's limitations resulting from his impairments which the ALJ thought could affect Plaintiff's working capabilities. (R. at 512-15.) Specifically, the ALJ asked the VE to assume he was dealing with a person who was the same age and had the same educational background and work history as the Plaintiff, who could perform light work. (R. at 512-15.) The ALJ then asked the VE to assume as follows:

13

> Now if we added only that, we changed, push/pull only occasional[ly]. Occasional stooping, other postural activities, never. Avoid, there's climbing, balancing, kneeling, crouching, crawling. And we're avoiding concentrated exposure to workplace hazards such as moving machinery, non-protected heights, the usual, asthma irritants, fumes, odors, dust, gasses, poor ventilation, extreme heat and cold, humidity and vibration. Manipulative activities frequently, but not constant[ly].

(R. at 513-14.)

As noted above, the ALJ properly found that the opinions of Drs. Michie, Allen, and Reese were not entirely supported by the preponderance of the record evidence. The ALJ adopted the postural, manipulative, and environmental restrictions suggested by those treating physicians, but otherwise accorded their medical opinions, including their opinions regarding the Plaintiff's need for longer bathroom breaks, time off, and foot elevation, less weight. (R. at 27.) Each of the limitations that the Plaintiff contends the ALJ failed to include in his hypothetical to the VE, are drawn from the opinions of Drs. Michie, Allen, and Reese, and concern the limitations which the ALJ found to be unsupported by the record. By excluding the those limitations, the ALJ ensured that the VE was not asked to assume any limitations that were not supported by the record. Accordingly, the hypothetical questions posed by the ALJ to the VE accurately represented the claimant's RFC, and are supported by substantial evidence on the record.

**3.    Plaintiff asserts that the Appeals Council erred by disregarding the additional evidence presented on remand.**

Plaintiff contends that the Appeals Council erred by disregarding additional evidence that Plaintiff presented on remand, namely a psychological evaluation performed by Dr. Blanche Williams thirteen months after the ALJ issued his decision. (Pl.'s Mem. at 28-29.) On remand, the Appeals Council considered Dr. Blanche's psychological evaluation of Plaintiff, but

concluded that it was not relevant to the decision of the ALJ because the evaluation did not present any evidence or history of mental health treatment prior to the date on which the evaluation was completed and, therefore, did not relate to the relevant time period considered by the ALJ. (R. at 522.)

The regulations provide that an application for benefits remains in effect until the ALJ's hearing decision is issued. <u>See</u> 20 C.F.R. §§ 404.620, 416.330. The relevant time period for Plaintiff's application for benefits extended from June 1, 2005, his alleged onset date, to December 20, 2006, the date of the ALJ's decision. Therefore, Dr. Blanche's evaluation, dated January 3, 2008, does not present evidence of an impairment existing during the relevant time period. (R. at 528-532.) Accordingly, the Appeals Council did not err in finding that the evaluation did not provide a basis for changing the decision of the ALJ.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 21) and motion to remand (document no. 22) be DENIED; that Defendant's motion for summary judgment (docket no. 24) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard L. Williams and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you**

**from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                              /s/
                                    DENNIS W. DOHNAL
                                    UNITED STATES MAGISTRATE JUDGE

Date: October 20, 2009
Richmond, Virginia